JOURNAL ENTRY AND OPINION
{¶ 1} On September 24, 2002, the applicant, Cedric Gates, pursuant to App.R. 26(B) and State v. Murnahan (1992), 63 Ohio St.3d 60,584 N.E.2d 1204, applied to reopen this court's judgment in State of Ohiov. Cedric Gates (June 26, 2001), Cuyahoga App. No. 78210, in which this court affirmed his convictions for robbery and preparation of drugs for sale. On November 21, 2001, the State of Ohio filed a brief in opposition, and on December 3, 2001, Mr. Gates filed a reply brief. For the following reasons, this court denies the application.
{¶ 2} On December 28, 1999, Mr. Gates engaged in a smash and grab robbery of a car stopped at a red light by throwing a rock through the window and stealing the victim's purse and briefcase. The victim suffered several small cuts on her face and a deep cut on her finger. After the victim reported the incident to the police, they established surveillance in the area. On December 30, 1999, Mr. Gates tried to repeat the crime. However, after the rock was thrown through the car window, the driver sped off, and the police arrested Mr. Gates. At that time they discovered seven grams of marijuana on him.
{¶ 3} Further investigation revealed that in 1985 Mr. Gates had perpetrated a similar smash and grab robbery. In that incident the victim gave chase and suffered a fatal heart attack; Mr. Gates was convicted of robbery and involuntary manslaughter.
{¶ 4} In early 2000, the Grand Jury indicted Mr. Gates for robbery, preparation of drugs for sale and possession of criminal tools[1] for the incidents occurring in December 1999. The robbery charge included a repeat violent offender specification for the 1985 robbery and involuntary manslaughter convictions. In April 2000, a jury found Mr. Gates guilty of robbery and preparation of drugs for sale. The judge sentenced him to eight years for robbery and added three years enhancement pursuant to R.C.2929.14(D)(2), the repeat violent offender specification, as well as a twelve-month sentence for the drug charge.
{¶ 5} On appeal, Mr. Gates' counsel raised nine assignments of error. These included arguments relating to the lineup, admission of other acts testimony, ineffective assistance of trial counsel, jury instructions, and the insufficiency of evidence on the drug charge. Appellate counsel asserted that the robbery conviction was invalid because the trial court allowed the jury to convict on a theory of either deadly weapon or physical harm. He also argued that the trial court erred in imposing the three-year enhancement on the repeat violent offender specification because the conditions of the statute could not be fulfilled. Finally, appellate counsel successfully argued that the trial court did not follow the sentencing statutes in imposing the maximum sentence on the drug charge.
{¶ 6} Mr. Gates in his timely application to reopen, claims that his appellate counsel was ineffective. Mr. Gates asserts that his appellate counsel should have argued that the repeat violent offender statute, R.C. 2929.14 (D)(2), was unconstitutional and that the jury instructions on the robbery charge were deficient.
{¶ 7} R.C. 2929.14(D)(2)(b) provides as follows:
{¶ 8} "(b) If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section,[2] the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:
{¶ 9} "(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
{¶ 10} "(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12
of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating the offender's conduct is less serious than conduct normally constituting the offense."
{¶ 11} Therefore, once the initial conditions for enhancing a sentence under R.C. 2929.14(D)(2) have been fulfilled, i.e., a previous conviction for a violent offense and the imposition of a maximum term, the trial judge must make several additional findings: the maximum term is insufficient to punish the offender because (1) there is a great risk of recidivism and (2) the maximum term is demeaning to the seriousness of the offense after weighing the factors in R.C. 2929.12.[3]
{¶ 12} Mr. Gates maintains that this legislative scheme is unconstitutional because it deprives the defendant of his right to have all facts tried to a jury pursuant to the Sixth Amendment and proved beyond a reasonable doubt under the Fifth Amendment's guaranty of due process. For support he relies upon Apprendi v. New Jersey (2000),530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348.
{¶ 13} In Apprendi, the offender fired several shots into the home of an African-American family and stated that he did not want that family in his neighborhood because of their race. The Grand Jury indicted Mr. Apprendi on multiple counts. However, the indictments did not refer to New Jersy's hate crime statute which allows the trial court to enhance the prison term for up to ten years, if the judge finds by a preponderance of the evidence that the crime was based on an impermissible motivation, such as race. Mr. Apprendi pleaded guilty to a second-degree offense, possession of a firearm for unlawful purpose, punishable by a five to ten year prison term. After conducting a hearing to determine Mr. Apprendi's motivation, the trial judge found that the crime was motivated by racial bias and imposed a twelve-year sentence.
{¶ 14} On appeal, the United States Supreme Court ruled in a five to four decision that the statutory scheme for the enhanced sentence was unconstitutional. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. * * * It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."530 U.S. 490. Thus, a jury had to find beyond a reasonable doubt that Mr. Apprendi's criminal actions were racially motivated before the additional two years could be imposed.
{¶ 15} Similarly, Mr. Gates argues that the enhanced penalty for a repeat violent offender under R.C. 2929.14(D)(2) is conditioned on the factual findings required by subsections (b)(i) and (b)(ii). The enhanced penalty is not so much a function of a prior conviction as it is a function of additional factual findings. Thus, Ohio's statutory scheme for additional punishment for repeat violent offenders is outside the scope of Apprendi's prior conviction exception. Apprendi demands that any findings which result in additional prison time beyond the statutory maximum for the charged offense must be found by a jury beyond a reasonable doubt. Thus, Ohio's statute, which requires the trial judge to make the findings on recidivism and the relative seriousness of the crime pursuant to an unspecified burden of proof is constitutionally infirm. Appellate counsel could have and should have raised this argument, which would have resulted in Mr. Gates serving three less years.
{¶ 16} However, in an App.R. 26(B) application, this constitutional argument must be viewed through the lens of a claim for ineffective assistance of appellate counsel. In order to establish such a claim, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
{¶ 17} In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland,104 S.Ct. at 2065.
{¶ 18} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.
{¶ 19} Additionally, appellate counsel is not deficient for failing to anticipate developments in the law or failing to argue such an issue. State v. Williams (1991), 74 Ohio App.3d 686, 600 N.E.2d 298;State v. Columbo (Oct. 7, 1987), Cuyahoga App. No. 52715, reopening disallowed (Feb. 14, 1995), Motion No. 55657; State v. Munici (Nov. 30, 1987), Cuyahoga App. No 52579, reopening disallowed (Aug. 21, 1996), Motion No. 71268, at 11-12: "appellate counsel is not responsible for accurately predicting the development of the law in an area marked by conflicting holdings." State v. Harey (Nov. 10, 1997), Cuyahoga App. No. 71774, reopening disallowed (July 7, 1998), Motion No. 90859; State v.Sanders (Oct. 20, 1997), Cuyahoga App. No. 71382, reopening disallowed, (Aug. 25, 1998), Motion No. 90861; State v. Bates (Nov. 20, 1997), Cuyahoga App. No. 71920, reopening disallowed (Aug. 19, 1998), Motion No. 91111; and State v. Whittaker (Dec. 22, 1997), Cuyahoga App. No. 71975, reopening disallowed, (July 28, 1998), Motion No. 92795.
{¶ 20} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
{¶ 21} In the present case Mr. Gates' argument on ineffective assistance of appellate counsel is not well taken. First, the issue of whether Ohio's repeat violent offender enhancement statute is constitutional is within a developing area of the law, and appellate counsel is not deficient for failing to raise such matters.
{¶ 22} Admittedly, it is easy to speculate that the current composition of the United States Supreme Court would find Ohio's scheme unconstitutional. Justice Stevens in writing the majority opinion stated "that a logical application of our reasoning today should apply if the recidivist issue were contested." 530 U.S. at 489-490. The necessary additional findings under Ohio law would arguably make the recidivist issue contested. The thrust of Justices Thomas and Scalia's concurring opinion is that any fact, including a prior conviction, which increases the punishment is an element that must proven beyond a reasonable doubt to a jury.
{¶ 23} Nevertheless, such speculation does not create the certainty necessary to establish ineffective assistance of appellate counsel for failure to raise the issue. Reasonable jurists could disagree on whether Apprendi demands that the facts of the prior conviction, the likelihood of recidivism and the relative seriousness of the offense be proven to a jury beyond a reasonable doubt. Apprendi exempts prior convictions from its scope. R.C. 2929.14(D)(2) in essence is an enhancement for prior convictions. Thus, it is also reasonable to conclude that subsection (D)(2) is not within Apprendi's scope and that Ohio's scheme is constitutional.
{¶ 24} That conclusion is bolstered by considering the anomalous results that would occur in declaring Ohio's scheme unconstitutional. If the statute provided for the enhanced punishment merely upon establishing the prior conviction, it would come squarely within Apprendi's exception and there would be little, if any, question on its constitutionality. But imposition of the enhanced penalty is dependent upon the further findings of both susbsections (D)(2)(b)(i) and (D)(2)(b)(ii). These two subsections offer significant further protections for the defendant; he can receive the additional prison time for a prior conviction only if the judge finds that there is a greater likelihood of recidivism and only if the crime is so serious that basic prison time will not adequately punish the offense. It would be anomalous to declare a scheme which offers the defendant more protection unconstitutional than a simpler constitutional scheme which would be harsher on the defendant. It would also be anomalous to require a jury to make factual findings on recidivism and the seriousness of the offense to enhance the punishment because of a prior conviction, when the defense probably would not want the jury to know anything about the prior conviction.
{¶ 25} Furthermore, Ohio courts have rejected constitutional attacks based on Apprendi. In State v. McCoy (Nov. 9, 2001), Hamilton App. Nos. C-000659 and C-000660 the appellant argued that the enhanced penalty under the major drug offender specification violated the Constitution pursuant to Apprendi. The enhanced penalty for the major drug offender specification is also dependent upon the trial judge making the findings for recidivism and relative seriousness under subsections2929.14(D)(2)(b)(i) and (b)(ii). The court of appeals ruled that when the jury found the appellant to be a major drug offender, it then authorized the judge to impose the enhanced penalty. "Therefore, the finding requisite to the imposition of the additional ten-year term — that the appellant was a `major drug offender' — did not `expose the [appellant] to a greater punishment than that authorized by the jury's guilty verdict.'" (Slip op. At 24, citing Apprendi 530 U.S. at 494.) Cf.State v. Jordan, Montgomery App. No. 18600, 2001-Ohio-1630 — the court rejected an Apprendi attack on the definition of "repeat violent offender."
{¶ 26} Therefore, the issue of the constitutionality of Ohio's sentencing scheme for a repeat violent offender is in a developing area of the law. Mr. Gates' appellant counsel, thus, was not required to argue it, and he was not deficient for failing to raise the issue.
{¶ 27} In addition to the "developing area of the law" theory, appellate counsel in the exercise of reasonable professional judgment could have rejected the Apprendi argument pursuant to his prerogative to choose strategy and tactics. Pursuant to the admonitions of the United States and Ohio Supreme Courts, this court will not second guess that professional judgment.
{¶ 28} Mr. Gates' appellate counsel vigorously attacked the three-year enhancement under the repeat violent offender specification. He argued the trial court erred in imposing the maximum sentence under robbery, which is the prerequisite for the enhanced sentence; it was improper for the judge to look at the 1985 conviction to determine the seriousness of the 1999 crime. Additionally, the evidence was insufficient to establish the recidivism and seriousness factors under subsections (b)(i) and (b)(ii); the trial judge improperly weighed the factors listed in R.C. 2929.12. Appellate counsel pursued these arguments in the main brief, in the reply brief and in a motion for reconsideration under App.R. 26(A). A victory based on these grounds would probably not have invited further appeal and uncertainty.
{¶ 29} Moreover, the procedural posture for making the constitutional argument was unfavorable. Trial counsel understandably stipulated to the prior offense and the judge's ability to sentence Mr. Gates pursuant to R.C. 2929.14(D)(2). This stipulation kept from the jury the highly prejudicial 1985 convictions for involuntary manslaughter and robbery arising from the same type of smash and grab robbery. Additionally, trial counsel could not argue Apprendi; the Court would not decide that case for another three months. It is not unforeseeable that the stipulation could have frustrated the constitutional issue at the appellate level, leaving appellate counsel with a very long and uncertain road to the United State Supreme Court. This court also notes that appellate counsel raised eight other issues, one of which was successful.
{¶ 30} In summary in regard to the Apprendi issue, this court rules that appellate counsel was not deficient for failing to raise the issue. The specific issue raised in this case, whether Ohio's repeat violent offender sentencing enhancement scheme is constitutional, is within a developing area of the law, and the outcome of that issue is not certain. Moreover, appellate counsel had another promising attack against the sentence, and he raised many other issues. Finally, the procedural posture was unfavorable for raising the argument.
{¶ 31} Mr. Gates also argues that his appellate counsel was ineffective because he did not properly argue that the jury instructions on the robbery charge were improper. Mr. Gates claims that the jury instructions were defective because they allowed the jury to convict him of robbery without unanimity; some of the jurors might have found him guilty because he used a deadly weapon and some might have found him guilty because he inflected physical harm on the victim. Proper jury instructions would have required all the jurors to agree on one or the other.
{¶ 32} This argument is meritless and barred by res judicata. Appellate counsel raised this argument in the main brief. He then filed a notice of supplemental authority to support the argument. Then in the App.R. 26(A) motion for reconsideration, appellate counsel squarely presented the identical argument to this court. In Murnahan, the Supreme Court of Ohio ruled that claims of ineffective assistance of appellate counsel could be barred by res judicata if the application is not unjust. Applying res judicata on this argument would be just.
{¶ 33} Accordingly, Mr. Gates' application to reopen pursuant to App.R. 26(B) is denied.
DIANE KARPINSKI, P.J. and MICHAEL J. CORRIGAN, J., CONCUR.
[1] At trial the jury found Mr. Gates not guilty on the possession of criminal tools charge.
[2] Eight years is the maximum sentence for the second degree felony of robbery.
[3] R.C. 2929.12 permits the trial judge to consider any relevant factor. Nevertheless, the statute lists many factors. Regarding the seriousness of the offense the statute specifies, inter alia, the following: the injury suffered by the victim, the victim's age and physical and mental condition, the offender's relationship with the victim, whether the offender is a public official, whether the offense was part of organized crime, whether the crime was motivated by the victim's race, ethnic background, or religion, whether the victim facilitated the crime, whether there was provocation and whether the offender expected to cause injury. Regarding recidivism the statute specifies, inter alia, the following: whether the offender was remorseful, whether the offender was under release from confinement, the offender's history of criminal convictions, whether the offender has responded favorably to sanctions previously imposed for criminal convictions and the extent that drug or alcohol abuse caused the offense.